UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARIA BRODSKY and MARIA BRODSKY : <br> as next friend on behalf of her minor child, S.B., : <br>     Plaintiffs, : <br> : <br>     v. : <br> : <br> TRUMBULL BOARD OF EDUCATION, : <br> RALPH IASSONGA and : <br> VALERIE FORESHAW, : <br>     Defendants. : | Civil No. 3:06cv1947 (PCD) |

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Maria Brodsky and her minor child S.B. bring this suit against the Trumbull Board of Education, Superintendent of Schools Ralph Iassogna, and Valerie Forshaw, Principal of Madison Middle School, claiming that Defendants "tolerat[ed] and encourag[ed] a pattern of sexual misconduct and gender discrimination" against S.B. (Amended Compl. ¶ 1), thus denying S.B. the benefits of an education on the basis of her sex, in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 (Count One).  Plaintiffs contend that Defendants failed to adequately address Plaintiffs' complaints that S.B. was being bullied and sexually harassed while attending Madison Middle School as an eighth grade student during the 2005-2006 school year.

Plaintiffs also make claims for violation of the First Amendment (Count Two) and malicious prosecution (Count Three), alleging that defendants Iassonga and Foreshaw retaliated against the Plaintiffs for their complaints of bullying and chilled their speech by falsely accusing Mrs. Brodsky of a crime.  Count Four alleges that the Trumbull Board of Education violated Connecticut General Statute § 10-222d, which requires school districts to maintain a bullying policy, in that the Board "fail[ed] to take action to prevent bullying." (Amended Compl. ¶ 4)

Count Five alleges intentional infliction of emotional distress. Defendants have moved for summary judgment on all counts. For the reasons stated herein, Defendants' Motion for Summary Judgment as to all claims [Doc. No. 39] is **granted.**

I.  BACKGROUND

The following undisputed material facts are set forth in Defendants' Local Rule 56(a)(1) Statement and are admitted by Plaintiffs in their Local Rule 56(a)(2) Statement, except as otherwise noted. Because this case is at the summary judgment stage, this Court views the record in the light most favorable to Plaintiffs as the non-moving parties. See Terry v. Ashcroft, 336 F.3d 128, 139 (2d Cir. 2003).

On October 12, 2005, a male student, C.B., called Plaintiff S.B. a lesbian. The comment was overheard by a teacher and reported to the administration. Defendant Valerie Forshaw, the Principal of Madison Middle School, and Peter Sullivan, the Assistant Principal, spoke with C.B., asked him to apologize, and warned him of the consequences of additional comments of this kind. No subsequent incidents involving C.B. were reported.

On December 15, 2005, a male student, A.R., stuck a pencil under S.B.'s buttocks while she was sitting and called her an "ugly skank." A teacher witnessed the event and reported it, after which Defendant Forshaw and Mr. Sullivan spoke with A.R., gave him a two day detention, called his parents, and made him apologize to S.B. Defendants also met with Plaintiff Maria Brodsky, S.B.'s mother, who indicated that she was satisfied with this response. No other incidents with A.R. were reported.

A female student, J.S., and S.B. were friends during seventh grade and part of eighth grade, until they had a falling out over another girl's statement to J.S. that S.B. did not like her

sweatshirt.  In January 2006, J.S. allegedly began calling S.B. "whore," "prude" and "bitch."  Plaintiffs allege that on January 5, 2006, in the hallway between classes, J.S. attempted to grab S.B.'s buttocks.  Plaintiffs state that "two other students saw what happened, but refused to say anything because they were afraid of J.S."  Rule 56(a)(2) Statement, ¶ 82.  Plaintiffs do not appear to claim that this incident was reported at the time to school authorities.  Indeed, Plaintiffs have admitted that February 14, 2006 was the first time that an incident between J.S. and S.B. was brought to the administration's attention.  Rule 56(a)(1) Statement, ¶ 14.

On February 12, 2006, J.S. allegedly threatened S.B. and called her names outside of homeroom class, although S.B. does not recall what the threat was.  S.B. testified that she remembered the date because it was written down in her journal.  However, Defendants state that S.B.'s journal reflects no such entry and that February 12, 2006 was a Sunday, not a school day.  S.B. states that she told her teacher, Ms. Cerulli, about the incident.  Ms. Cerulli testified that she does not recall S.B. ever telling her that J.S. had called her names, nor did Ms. Cerulli ever personally observe any students harassing or bullying S.B.  (Cerulli Affidavit, ¶¶ 7, 13)

On February 14, 2006, Mrs. Brodsky reported to Defendant Forshaw and Mr. Sullivan that J.S. had made mean comments to S.B. during online conversations between the girls.  Forshaw and Sullivan warned J.S. that they would be watching for any similar behavior at school, and notified J.S.'s mother.  On February 15, 2006, J.S. and C.B. sat behind S.B. and her friend V.M at a school assembly.  J.S. allegedly called S.B. a "bitch" and "troublemaker" and told C.B. to put gum in S.B.'s hair.  C.B. refused.  Someone put gum in V.M.'s hair.  Mrs. Brodsky reported this incident to Ms. Foreshaw.  J.S. received a detention and her mother was again notified.

On February 27, 2006, Mrs. Brodsky reported to school administrators that J.S. sent an instant message under another student's name to S.B. saying "You need to stop this, you bitch." No copy of the message was provided, nor was there any evidence that J.S. had sent it, since it was not sent under J.S.'s username. Following this incident, Foreshaw and Sullivan completed an incident report and conducted an investigation regarding the alleged bullying. Rule 56(a)(1) Statement, ¶ 23. Plaintiffs deny this statement on the basis that "Valerie Foreshaw has stated that there were no documented bullying incidents." Rule 56(a)(2) Statement, ¶ 23. However, the fact that the outcome or findings of the investigation were not consistent with Plaintiffs' views of the situation does not mean that no investigation into the alleged bullying took place, and Defendants have testified that an investigation took place and have attached documentation of such. Plaintiffs also admit that Mrs. Brodsky indicated that she did not want the school to interview or question S.B. about the incidents.

On March 2, 2006, Mrs. Brodsky reported that at dismissal time, J.S. gave S.B. the middle finger and slid her index finger across her throat. Upon questioning by administrators, J.S. claimed S.B. had given her the finger first. J.S. was directed to read the bullying policy and told that she would be disciplined for verified acts of bullying. Foreshaw and Sullivan met with the girls' teachers to make them aware of the situation, communicated to Mrs. Brodsky that they had done so, and told her that S.B. should inform the teachers of any problems.

On March 6, 2006, S.B. told her mother that A.T., S.W., and T.S., other girls who were friends with J.S., had called her "slut," "prude," "bitch" and "whore." Mrs. Brodsky reported this to Foreshaw and Sullivan, who met with the girls and warned them that name calling would not be tolerated. Over the next two weeks, Mrs. Brodsky continued to complain about the girls'

4

treatment of S.B. The girls claimed that S.B. was calling them names. The girls were required to meet with a school counselor and their parents were notified.

On March 7, 2006, Mrs. Brodsky reported that J.S. had thrown a straw into S.B.'s hair after chewing on the straw. Defendants state that they investigated the complaint and that a male student, J.G., admitted that he had thrown the straw. Plaintiffs deny this, claiming that J.S. threw the straw and that teacher Ms. Cerulli witnessed it. Ms. Cerulli states that the other student, not J.S., threw the straw. (Cerulli Affidavit, ¶ 12) J.G. was required to write an apology letter to S.B., and he received a lunch detention. No other incidents involving J.G. were reported.

On March 8, 2006, J.S. reported to school officials that Mrs. Brodsky had pushed her while they were outside the school at dismissal time. (Forshaw Aff. ¶ 27, Sullivan Aff. ¶ 27, Cerulli Aff. ¶ 15) J.S.'s mother told administrators that she intended to call the police, and police did come to the school. Plaintiffs admit that Defendants did not call the police or otherwise initiate Mrs. Brodsky's arrest.

On March 13, 2006, Mrs. Brodsky reported to Ms. Foreshaw that J.S. had made more online threats to S.B. Defendants removed J.S. from S.B's homeroom that day. The following day, Mrs. Brodsky requested that S.B. be dismissed from class five minutes early every day to avoid J.S., A.T., S.W., and T.S. Defendants claim they agreed to have the school security guard monitor the hallway at dismissal. Plaintiffs claim that the hallway was never monitored. On March 14, 2006, Mrs. Brodsky emailed Trumbull Board of Education members to inform them that S.B. was "being harassed by a group of girls." The email mentioned scare tactics and verbal threats but no physical contact was alleged.

On March 15, 2006, Dr. Anthony Minotti, Assistant Superintendent of Schools, met with

5

Mr. and Mrs. Brodsky, Ms. Foreshaw, and Mr. Sullivan. At the meeting, Mrs. Brodsky reported that J.S. was bullying S.B., that A.R. had stuck a pencil under S.B.'s buttocks, that J.S. had stuck her middle finger up and got inappropriately close to S.B. when S.B. asked her not to, and that at Mrs. Brodsky's home the previous summer, when the girls were still friends, J.S. had slapped S.B. on the buttocks in a manner that Mrs. Brodsky found offensive, although she stated that she didn't think J.S. meant it that way. In response, Dr. Minotti set forth a plan to address the complaints, which included meeting with J.S., A.T., S.W. and T.S. and giving them an assignment on bullying, counseling for S.B., meetings between a social worker and Mr. and Mrs. Brodsky, a meeting with J.S.'s parents, a meeting with the teachers of J.S. and S.B. to review the district bullying policy, an escort for S.B. at dismissal, monitoring of the hallway by a school security guard, and progressive discipline for bullying. The plan was documented in two letters from Foreshaw and Minotti to Plaintiffs.

Over the course of the next week, Dr. Minotti substantially implemented the plan, including meeting with the teachers of S.B. and J.S., meeting with the parents of J.S. to inform them of the bullying investigation, and calling the parents of S.W., A.T., and T.S. to discuss the situation. S.B. began meeting with a school social worker. Dr. Minotti met with J.S., S.W., A.T. and T.S., required them to read the bullying policy and complete a writing assignment about it, and warned the girls that they could face significant punishments, including suspension, if the investigation substantiated the allegations of bullying. Plaintiffs contend that J.S.'s writing assignment submission was not a satisfactory letter of apology. Plaintiffs also contend that S.B. was never provided a hallway monitor, while Defendants maintain that the school security guard did monitor J.S.'s actions in the hallways. Defendants' investigation did not substantiate the

6

allegations of bullying. Plaintiffs take issue with this finding.

Following the above actions, the Brodskys made no further complaints to Dr. Minotti, nor did they report any additional incidents involving S.W., A.T. or T.S. Two months later, on April 28, 2006, Mrs. Brodsky called Ms. Foreshaw and told her that she had talked with J.S.'s mother at the library the previous day, and that S.B. and J.S. were trying to be friends again. Later that day, Mrs. Brodsky was arrested on the March 8, 2006 assault charge regarding the incident in which she had allegedly pushed J.S. outside the school. On April 30, 2006, J.S. sent S.B. an email apologizing, and S.B. responded, forgiving her. That same day, Mrs. Brodsky filed a harassment complaint with the police department against J.S.'s mother, alleging that J.S.'s mother had confronted Mrs. Brodsky at the library on April 27, 2006 and used abusive and threatening language.

On May 3, 2006, police questioned Principal Foreshaw about her conversation with Mrs. Brodsky on April 28, 2006, the day after the library incident, and Ms. Foreshaw gave a statement regarding the conversation. Also on May 3, 2006, Mrs. Brodsky provided to Ms. Foreshaw a copy of instant messages between J.S. and S.B. in which the girls appeared to have reconciled. However, on May 17, 2006, Mrs. Brodsky left a note for Ms. Foreshaw indicating that J.S. was no longer speaking to S.B. and stating, "I cannot predict what here [sic] next set of behaviors will be toward my children. Please be aware!" Foreshaw and Sullivan met with Mrs. Brodsky and J.S., separately, about J.S. allegedly not speaking to S.B. J.S. later instant messaged S.B. to say that she was not mad at S.B. but could not talk with her without getting in trouble.

Plaintiffs allege that on May 26, 2006, J.S. touched S.B.'s breasts and/or buttocks and called her a "prude bitch." (M. Brodsky Dep. 55, 69, 218, 227-231) Plaintiffs claim that a few

7

days later, Mrs. Brodsky called Assistant Principal Sullivan and reported this incident.  Id. Defendants deny that they received any such complaint.  (Sullivan Aff. ¶¶ 8, 53)  Plaintiffs admit that had such an incident occurred, and had it been reported to school administrators, it would have constituted the first and only incident of alleged touching that was perceived at the time at which it occurred to be inappropriate and requiring school intervention.  Rule 56(a)(1) Statement, ¶ 81.

On June 1, 2006, Mrs. Brodsky complained that another girl, A.S., who was not previously implicated in any incidents, had sent mean emails to S.B.  Foreshaw and Sullivan spoke with A.S. and notified her mother.  No further complaints were received regarding A.S.

On June 15, 2006, Defendant Superintendent of Schools Ralph Iassogna saw Mrs. Brodsky at the Central Office and invited her to speak with him.  She related her disagreement with the findings of Ms. Foreshaw, Mr. Sullivan, and Dr. Minotti that there was no evidence to support her allegations of bullying.  Mr. Iassonga agreed to look into the issue, and subsequently spoke with staff and reviewed the district's response to Mrs. Brodsky's complaints.  He determined that the district had responded appropriately and expressed that finding to Mr. and Mrs. Brodsky in a letter dated August 2, 2006.

There were no other incidents involving S.B. and any of her peers from June 1, 2006 through the end of the school year.  At no time during the year was S.B. ever physically hurt. S.B. subsequently entered Trumbull High School for the ninth grade, and this lawsuit pertains only to her experiences at Madison Middle School.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate only when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  However, "[c]onclusory allegations will not suffice to create a genuine issue."  Delaware & H.R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

       The initial burden falls on the moving party, who is required to "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d, 265 (1986).  "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial.  It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. 2548); see also Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case.").  If the moving party meets its burden, the burden shifts to the party opposing summary judgment to set forth "specific facts showing that there is a

9

genuine issue for trial." FED. R. CIV. P. 56(e). In determining whether the parties have met their respective burdens, the Court draws "all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Rodriguez v. City of N.Y., 72 F.3d 1051, 1060 (2d Cir. 1995) (citations omitted). However, the non-moving party "may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that 'its version of the events is not wholly fanciful.'" Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)); see also FED. R. CIV. P. 56(e). Determinations of the proper weight to accord evidence and assessments of the credibility of witnesses are within the sole province of the jury and are therefore improper on a motion for summary judgment. Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). "If reasonable minds could differ as to the import of the evidence . . . and if . . . there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal citations omitted); see also Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000) ("When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.").

**III.   DISCUSSION**

**A.   Title IX**

Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688, provides, with certain exceptions not at issue here, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Recipients of federal funding, like the Trumbull Board of Education, may be liable for damages under Title IX for student-on-student sexual harassment. See Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 653, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999). The issue before the Court is whether Plaintiffs have proffered sufficient evidence of each element of a Title IX claim to survive summary judgment.

The Supreme Court established that a Title IX claim based on student-on-student sexual harassment is supported when a plaintiff satisfies the following elements: (1) the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school; (2) the funding recipient had actual knowledge of the sexual harassment; and (3) the funding recipient was deliberately indifferent to the harassment. Doe ex rel. Doe v. Derby Bd. of Educ. ("Derby"), 451 F. Supp. 2d 438, 434 (D. Conn. 2006) (citing Vance v. Spencer Cty. Pub. Sch. Dist., 231 F.3d 253, 258-59 (6th Cir. 2000)); see also Davis, 526 U.S. at 633; Kelly v. Yale Univ., No. 3:01-cv-1591 (JCH), 2003 WL 1563424, at *1, *4 (D. Conn. March 26, 2003). Title IX liability for student-on-student harassment is limited "to circumstances wherein the [funding] recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." Davis, 526 U.S. at 645.

Defendants have moved for summary judgment with respect to Plaintiffs' Title IX claim on the basis that the alleged harassment was not severe and pervasive, that the alleged harassment was not based on S.B.'s sex, and that there is no evidence of deliberate indifference by the Trumbull Board of Education.

Construing credibility disputes in favor of Plaintiffs, the evidence shows that while S.B. suffered numerous instances of rude and unkind treatment by various peers, the alleged behavior was not sufficiently pervasive or severe from an objective standpoint so as to give rise to a claim under Title IX. Plaintiffs have alleged that S.B. was subjected to name-calling and insults, had a straw thrown at her, had a pencil stuck under her butt, had her butt slapped by J.S. at the Brodsky home while the girls were still friends, and on one occasion, had her breasts and/or buttocks touched by J.S. in the hallway at school without S.B.'s consent. While inappropriate and not to be condoned, these actions collectively are not so severe, pervasive, and objectively offensive that they could reasonably be said to deprive S.B. of access to the educational opportunities or benefits provided by the school.

Furthermore, Title IX by its terms provides a remedy only for discrimination or harassment "on the basis of sex." 20 U.S.C. § 1681(a). Harassment on the basis of sex can be perpetrated by an individual of the same sex as the victim for Title VII purposes, Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75 (1998), and the same reasoning applies in the Title IX context. See Doe v. E. Haven Bd. of Educ., 430 F. Supp. 2d 54, 61 (D. Conn. 2006); Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 65-66 (1st Cir. 2002) (finding that "the reasoning of Oncale is fully transferable to Title IX cases" and holding that allegations of same-sex sexual harassment are cognizable under Title IX). Depending on the context, the use of gendered or

sexually loaded insults such as "bitch," "whore," "prude," and "slut" can certainly be indicative of animus on the basis of sex, but the mere fact of their use is not necessarily sufficient to establish such, particularly among children. "The Supreme Court in Davis recognized that children are not like adults and often engage in behavior that adults would find inappropriate and offensive," without such behavior necessarily being actionable. Riccio v. New Haven Bd. of Educ., 467 F. Supp. 2d 219, 224-225 (D. Conn. 2006), citing Davis, 526 U.S. at 652. Here, Defendants have asserted and Plaintiffs have admitted that soon before the name-calling commenced, J.S. and S.B., who had formerly been friends, had a falling out after J.S. heard a rumor that S.B. had criticized her clothing. Rule 56(a)(1) Statement, ¶¶ 9-10. This suggests that the use of these insults was triggered by a particular incident between the girls rather than by a general hostility on the part of J.S. toward other female students based on their gender. Title IX was not intended and does not function to protect students from bullying generally (as opposed to sexual harassment or gender discrimination) or to provide them recourse for mistreatment that is not based on sex.

      However, assuming *arguendo* that a reasonable jury could find that the alleged harassment was sufficiently severe and pervasive and was based upon sex, Plaintiffs' Title IX claim nonetheless fails to survive summary judgment because Defendants were not deliberately indifferent to the instances of alleged harassment that were reported to Defendants by Plaintiffs or which were otherwise known to Defendants. See Davis, 526 U.S. at 642, 649 (actual and adequate notice of harassment required before liability is triggered); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000) (defendant school board not liable for harassment that occurred before plaintiff reported conduct to school); Derby, 451 F. Supp. 2d at 445-46

(defendant school board not liable for off-campus sexual assault that occurred before plaintiff reported any harassment); Kelly, 2003 WL 1563424, at *1, *3 (same for defendant university).

Title IX is violated when a federal funding recipient's response to known harassment amounts to "deliberate indifference to discrimination." Derby, 451 F. Supp. 2d at 447 (citing Hayut v. State Univ. of N.Y., 352 F.3d 733, 751 (2d Cir. 2003)); see also Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998). "Deliberate indifference may be found both when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances, and when remedial action only follows after a lengthy and unjustified delay." Hayut, 352 F.3d at 751 (internal citations and quotations omitted). See Derby, 451 F. Supp. 2d at 447 (jury could find deliberate indifference where several weeks passed before the Board took disciplinary action against the student perpetrator of an off-campus sexual assault). The deliberate indifference "must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." Davis, 526 U.S. at 645. "[T]his is not a mere 'reasonableness' standard that transforms every school disciplinary decision into a jury question." Gant ex rel. Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 141 (2d Cir. 1999)) (internal citations and quotations omitted).

Far from being deliberately indifferent to Plaintiffs' complaints, the record reflects that Defendants acted reasonably and expeditiously to respond to the incidents of alleged harassment of which they were aware. On numerous occasions, Defendants warned students about their behavior, issued punishments such as detentions and writing assignments on bullying, spoke with parents about their children's behavior, met with teachers to inform them about the situation, separated the children or attempted to increase the supervision of their interactions, provided

14

counseling to support S.B., communicated on an ongoing basis with Mr. and Mrs. Brodsky, and conducted an investigation into the allegations of bullying. The fact that Plaintiffs were not satisfied with the outcome of the investigation, which found the allegations of bullying unsubstantiated, or that the students who allegedly bullied S.B. were not punished as severely as Plaintiffs might have wished is not itself indicative of the Board's deliberate indifference. "[A] victim of peer harassment does not have a right to any particular remedial demand, immediate expulsion of her alleged harasser, or a remedy that would expose the school to a constitutional or statutory claim on the part of the accused." Kelly, 2003 WL 1563424, at *4 (citing Davis, 526 U.S. at 648-49). "An aggrieved party is not entitled to the precise remedy that he or she would prefer." Oden v. N. Marianas College, 440 F.3d 1085, 1089 (9th Cir. 2006).

In most instances, Defendants' efforts were successful, and no additional incidents of alleged bullying of S.B. by C.B., A.R., J.G., A.S., S.W., A.T., or T.S. were reported after Defendants promptly intervened in response to Plaintiffs' complaints. To the extent that Plaintiffs' have alleged an ongoing problem with bullying or harassment by J.S., the record reflects that Defendants took reasonable steps to investigate and progressively address each complaint that was made to Defendants about J.S. Defendants responded in a timely manner consistent with the district's bullying policy and with common sense to address the issue. The Supreme Court has explained that it is a mischaracterization of the standard to suggest that funding recipients are required to "remedy" peer harassment in order to avoid liability under Title IX. Davis 526 U.S. at 648. The "courts should refrain from second guessing the disciplinary decisions made by school administrators." Davis 526 U.S. at 648, citing New Jersey v. T. L. O., 469 U.S. 325, 342, n. 9, 83 L. Ed. 2d 720, 105 S. Ct. 733 (1985). No reasonable fact finder could

conclude that the district's response was "clearly unreasonable in light of the known circumstances," Davis 526 U.S. at 648, or that the district "fail[ed] adequately to respond." Hayut, 352 F.3d at 750.  Therefore, summary judgment is granted to Defendants on the Title IX claim.

**B.      Abandoned Claims: Retaliation in Violation of the First Amendment, Malicious Prosecution, and Violation of Connecticut General Statute § 10-222d**

Plaintiffs have asserted claims for violation of the First Amendment (Count Two) and malicious prosecution (Count Three), alleging that defendants Iassonga and Foreshaw retaliated against the Plaintiffs for their complaints of bullying and chilled their speech by falsely accusing Mrs. Brodsky of a crime.  Count Four alleges that the Trumbull Board of Education violated Connecticut General Statute § 10-222d, which requires school districts to maintain a bullying policy, in that it "fail[ed] to take action to prevent bullying." (Amended Compl. ¶ 4) Defendants seek summary judgment with respect to the First Amendment claim on the basis that Plaintiffs were not engaged in protected speech, that Defendants did not take the alleged retaliatory actions, that there is no evidence that Plaintiffs' speech was chilled, and that Defendants are entitled to qualified immunity.  Defendants seek summary judgment with respect to the malicious prosecution claim on the grounds that Defendants did not initiate or procure the institution of criminal proceedings against Mrs. Brodsky, that there is no evidence that the criminal proceedings terminated in Mrs. Brodsky's favor, and that Defendants are entitled to governmental and absolute immunity.  Defendants seek summary judgment with respect to Plaintiffs' statutory claim because Connecticut General Statute § 10-222d does not create a private cause of action.  In their Opposition to the Motion for Summary Judgment, Plaintiffs fail

to provide any response to these arguments. In their Reply, Defendants argue correctly that Plaintiffs' failure to address these arguments in their opposition papers constitutes abandonment of the claims.

Since Plaintiffs have failed to address these claims in any manner in their opposition to the motion for summary judgment, Counts Two, Three, and Four are deemed abandoned, and summary judgment is granted to Defendants. See Santiago v. Newburgh Enlarged City School Dist., 485 F. Supp. 2d 327, 338 (S.D.N.Y. 2007) (dismissing plaintiff's claim that she was fired in retaliation for complaining about discrimination because she failed to respond to the defendant's summary judgment argument); Coger v. Connecticut, 309 F. Supp. 2d 274, 280 (D. Conn. 2004) (noting that the court can consider a §1981 claim abandoned merely because the plaintiff failed to respond to the defendant's argument that summary should be granted in his favor); Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal Courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way"); Douglas v. Victor Capital Group, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (holding where the defendant's summary judgment motion addresses specific employment discrimination claims, and the plaintiff's opposition papers do not oppose such arguments, court may deem the claims abandoned and grant summary judgment).

**C.     Intentional Infliction of Emotional Distress**

Plaintiffs have also brought a state law claim for intentional infliction of emotional distress. Defendants have moved for summary judgment on the basis that the alleged conduct was not sufficiently extreme and outrageous, which Plaintiffs have contested in their Opposition

to the Motion for Summary Judgment. Defendants have also asserted governmental and absolute immunity with respect to this claim. Because the Court has granted summary judgment as to all of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over their state law claims. See 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if --(3) the district court has dismissed all claims over which it has original jurisdiction . . . ."). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." Hernandez v. Carbone, 567 F. Supp. 2d 320, 333-34 (D. Conn. 2008) (quoting Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003)).

IV. **CONCLUSION**

For the reasons stated herein, Defendants' Motion for Summary Judgment as to all claims [Doc. No. 39] is **granted.** The Clerk shall close the case.

SO ORDERED.

Dated at New Haven, Connecticut, this 30th day of January, 2009.

/s/_____
Peter C. Dorsey, U.S. District Judge
United States District Court